BALTIMORE & OHIO RAILROAD COMPANY, APPELLANT, *v.* PUBLIC
UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Baltimore & Ohio RR. Co. *v.* Pub. Util. Comm. (1986),
22 Ohio St. 3d 275.]

(No. 85-476—Decided March 19, 1986.)

*Squire, Sanders & Dempsey, James M. Tobin* and *David J. Hirsch,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *Steven H. Feldman,* for appellee.

*Ruppert, Bronson & Chicarelli Co., L.P.A., James D. Ruppert* and *John D. Smith,* for intervening appellee Larry R. Miller.

DOUGLAS, J.  The issue in this case is whether the commission erred in finding that the railroad violated its April 28, 1977 and September 1, 1977 orders.[2] In resolving this issue, we are mindful of the fact that this court will not disturb a commission order unless it appears from the record that the order is manifestly against the weight of the evidence and is so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty. *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403 [71 O.O.2d 393], paragraph eight of the syllabus.

The starting point of our analysis must be the April 28, 1977 commission order. The order required the railroad to do four things: (1) to install an automatic train-activated warning system at the Stahlheber Road crossing; (2) to submit information concerning the cost of the system, and plans for its installation to the commission within thirty days; (3) to enter into an agreement, within ninety days, with Butler County as to the apportionment of the cost of the warning system; and (4) to notify the commission if the parties could not agree as to the apportionment of the cost within the time specified by the commission. Subsequently, the railroad requested that it be given an extension of time until November 6, 1977 to

---

[2] Although the commission did not make an express finding that the September 1, 1977 order was violated, such a determination is implicit from the record of this case.

enter into an agreement with the county as to the apportionment of costs. The commission granted the request for an extension of time by an order dated September 1, 1977.

The railroad did not comply with the orders of the commission. It failed to enter into an apportionment-of-costs agreement or, in the alternative, to notify the commission, by November 6, 1977, of its failure to do so. In fact, the railroad chose to disregard its obligations until the occurrence of the August 26, 1978 double fatality at the Stahlheber Road crossing. After that tragic incident (the second double fatality at the crossing in less than eight years), the railroad immediately entered into an apportionment-of-costs agreement with the county, and the warning system became operational on October 17, 1978. Based on these facts, the commission found that the railroad violated the commission's previous orders. When the commission holds a hearing and determines that one of its prior orders has been violated, the commission's determination of that issue will not be reversed on appeal unless it is against the manifest weight of the evidence. *Southern Ry. System* v. *Pub. Util. Comm.* (1957), 166 Ohio St. 240, 242 [2 O.O.2d 60].

We find the commission's determination, that the railroad violated the commission's previous orders, to be supported by competent, credible evidence and it is, therefore, affirmed in all respects.

*Order affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and C. BROWN, JJ., concur.

WRIGHT, J., concurs in judgment only.

HOLMES, J., dissents.

HOLMES, J., dissenting. Although I agree that this court will not disturb a commission order unless it appears from the record that the order is against the weight of the evidence and shows misapprehension, mistake, or willful disregard of duty, under *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403 [71 O.O.2d 393], paragraph eight of the syllabus, I differ from the majority in that I believe the record demonstrates that such test has been met.

After the tragic accident on August 26, 1978, the commission specifically found that the B & O Railroad had not violated the April 28, 1977 order to install and maintain automatic protection devices at the crossing involved herein. On December 21, 1978, the commission in part entered the following:

"2. On October 17, 1978, the devices were placed into service.

"3. The staff of the Commission's Railroad Section submitted its final inspection report on December 5, 1978 indicating respondent had

complied fully with the Commission's order and all systems were functioning properly.

"4. This matter should now be closed of record."

No motion for rehearing was filed as to this final order, but, in December 1984, six years later, the commission found that the railroad violated the April 1977 order. This change in factual findings violates the *res judicata* and collateral estoppel doctrines as well as the decisions of this court. Once the commission has made a final order finding that the railroad had complied fully with the April 1977 order, absent an application for rehearing, the commission may not lawfully reopen a closed case and change the order. *Greer* v. *Pub. Util. Comm.* (1961), 172 Ohio St. 361 [16 O.O.2d 214]; *Pollitz* v. *Pub. Util. Comm.* (1918), 98 Ohio St. 445. Therefore, the commission's order dated December 4, 1984, which does just that, is unlawful and may not be upheld by this court.

Even if there were no unlawful reopening of cases and refinding of facts, the record does not necessarily support the commission's finding that the April 1977 order was violated. The commission's decision itself states that "no definite date for completion of the installation was established," but goes on to blame the railroad's failure to submit a cost apportionment agreement as the cause of the commission's own failure to set such a date. When the railroad attempted to put forth evidence of the commission's acquiescence in modifications of its order as to when the cost apportionment agreement was required to be submitted,[3] and of the commission's desire to have the matter resolved privately,[4] such evidence was held inadmissible as irrelevant.

The railroad argued at the hearing that the April 1977 order was so

---

[3] After the extension of the deadline for submission of plans until September 7, 1977 and for submission of the allocation agreement until November 6, 1977, the commission was apprised by the Butler County Engineer's letter dated June 9, 1978 that the agreement had not yet been received. J. W. Jenkins responded by letter dated June 30, 1978, on behalf of the commission, that: "We hope the agreement can be worked out very soon and submitted to the Public Utilities Commission for approval." Additionally, the commission's monthly meetings reviewing all railroad crossing projects resulted in no action taken against appellant.

[4] Appellant proffered evidence through testimony of Marvin E. Rothharr, the commission's director of transportation, that in 1977-1978, the commission had agreed to issue orders seeking the resolution of crossing disputes via private agreements between the affected parties, and that the April 1977 order in issue reflected this approach. There was evidence that, because of this approach, the case was not pursued to culmination on an "apportionment order" basis as long as negotiations were on-going and that "[t]he Staff had only then to track it from the standpoint of, number one, whether the County was going to get the money and, number two, whether the agreement was going to be reached for installation between the two parties." Such evidence is indicative of orders being written broadly in order to give leeway for private agreements, and therefore not requiring specific actions unless and until an additional order was issued. This evidence is highly relevant to the railroad's compliance with an order designed only to serve as a mechanism for ultimate enforcement.

phrased as to raise a question of fact of what the railroad was actually required to do, *i.e.*, it "should" reach an agreement with the county as to cost apportionment, and, if it did not, it "should" notify the commission. This argument at least required the commission to determine whether the order was ambiguous in using the "should" language. In order to make such a factual determination, the commission must have all the relevant facts before it to enable it to reach a just and correct conclusion. *Elyria Telephone Co.* v. *Pub. Util. Comm.* (1953), 158 Ohio St. 441, 444 [49 O.O. 391]. As to the exclusion of the state representative's communications with a former commission staff member regarding the meaning of the April 1977 order, the commission in its January 22, 1985 order denying rehearing herein reasoned that the "Staff members or even Commissioners speaking outside the context of the official proceeding have no authority to countermand or modify the provisions of the Order." However, this does not explain why the excluded testimony was not relevant to determining the factual question of whether the "should" language in the order was ambiguous. Communications with the commission to help clarify the meaning of "should" in the order, are highly relevant to a finding on the order's ambiguity, as well as to the finding on the railroad's compliance.

Although this court may not generally reverse a commission's order because of an error in introduction of evidence, *Cincinnati* v. *Pub. Util. Comm.* (1949), 151 Ohio St. 353 [39 O.O. 188], we must do so where appellant is prejudiced thereby, *Cincinnati Bell Tel. Co.* v. *Pub. Util. Comm.* (1984), 12 Ohio St. 3d 280. When a record supporting a commission's finding that its order was unambiguous is accomplished by excluding evidence that it was ambiguous, appellant is obviously prejudiced as it cannot be said that appellant would still be found in violation of the ambiguous order despite the evidentiary error. This is true especially in light of this court's decisions in *Ormet Corp.* v. *Lindley* (1982), 69 Ohio St. 2d 263 [23 O.O.2d 150], and *Recording Devices, Inc.* v. *Bowers* (1963), 174 Ohio St. 518 [23 O.O.2d 150], allowing that reliance on informal commissioner or staff opinions may in some instances estop the commission from later taking a contrary stance.

Accordingly, I would have this court reverse the commission's finding that the railroad did not comply with the April 1977 order after the December 1978 entry finding that it had violated the order, or, at least remand the cause for a factual determination of whether the April 1977 order was ambiguous so as to allow for private negotiations to suffice as compliance with it.