IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION
Relator, James Menough, has filed this original action challenging orders issued by respondent Industrial Commission of Ohio ("commission") pursuant to R.C. 4123.52, in which the commission terminated prior awards of compensation for permanent total disability ("PTD") and temporary total disability ("TTD") and also declared overpayments of PTD compensation, TTD compensation, and payments from the Disabled Workers Relief Fund ("DWRF"). Relator also challenged a commission order denying his appeal of a determination by the Bureau of Workers' Compensation ("BWC") that relator must reimburse the state for overpayments received due to fraud.
The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion in terminating the prior awards of PTD and TTD compensation, in declaring overpayments of PTD and TTD compensation and DWRF payments, in finding that relator's receipt of these benefits was fraudulent, and in concluding that BWC may recover the overpayments from relator. However, the magistrate took issue with that portion of the commission's order directing BWC to collect the overpayments "pursuant to the fraud provision contained in R.C.4123.511(J)." The magistrate found that the commission's citation to R.C. 4123.511(J) was contrary to law because that statute was not in effect at the time the compensation was awarded. The magistrate further noted, however, that recovery of overpayments resulting from relator's fraud was appropriate under the law set forth in State ex rel. RMI Co. v. Indus. Comm. (1990), Franklin App. No. 98AP-639, and State ex rel. Martin v. Connor (1984), 9 Ohio St.3d 213. The magistrate recommended that this court issue a limited writ of mandamus ordering the commission to amend the orders at issue to delete its reference to R.C. 4123.511(J).
The commission has filed objections to the magistrate's decision, arguing that the issuance of a limited writ compelling the commission to correct its citation to R.C. 4123.511(J) is unnecessary, as such action would not change the result of the proceedings. The matter is now before this court for a full, independent review.
In State ex rel. Carter v. Penske Truck Leasing, Inc. (2002),94 Ohio St.3d 208, the commission denied claimant's motion for reconsideration on the basis that the request did not satisfy a particular commission resolution. The Ohio Supreme Court held that the commission's citation to an improper authority did not constitute a basis for granting mandamus relief because the result of the proceeding would be the same if the correct legal authority h ad been cited and considered. Specifically, the court stated:
 * * * [A]ny order to the commission to further consider appellant's claim would be a vain act, since the same result would be inevitable. See State ex rel. Rodriguez v. Indus. Comm. (1993), 67 Ohio St.3d 210, 616 N.E.2d 929. [Id. at 209.]
In the instant action, case law supports the commission's determination that relator was required to fully repay all compensation obtained due to the fraud he perpetrated against BWC. Pursuant to Carter, since there is legal authority that fully supports the commission's determination, any order requiring the commission to correct its citation to R.C. 4123.511(J) would be a " vain act," since the same result would be inevitable.
Based on the foregoing, this court adopts the magistrate's findings of fact and conclusions of law to the extent that the magistrate determined that the commission did not abuse its discretion in terminating the prior awards of PTD and TTD compensation, in declaring overpayments of PTD and TTD compensation and DWRF payments, in finding that relator's receipt of those benefits was fraudulent, and in concluding that BWC may recover the overpayments from relator. However, this court rejects the magistrate's recommendation that this court issue a limited writ of mandamus ordering the commission to correct its citation to R.C. 4123.511(J). Therefore, we sustain the commission's objections and deny the requested writ of mandamus.
Objections sustained; writ denied.
BOWMAN and BROWN, JJ., concur.
 APPENDIX A
MAGISTRATE'S DECISION
 IN MANDAMUS
Relator, James Menough, filed this original action in mandamus challenging orders issued by respondent Industrial Commission of Ohio pursuant to R.C. 4123.52, in which the commission terminated prior awards of compensation for permanent total disability ("PTD") and temporary total disability ("TTD") and also declared overpayments of PTD compensation, TTD compensation, and payments from the Disabled Workers Relief Fund ("DWRF"). Relator also challenges a commission order denying his appeal of a determination by the Bureau of Workers' Compensation ("bureau") that relator must reimburse the state for overpayments received due to fraud.
Relator seeks a writ compelling the commission to vacate its termination of PTD compensation and DWRF payments, and to vacate its order upholding the bureau's determination that claimant must repay the overpayments of TTD, PTD, and DWRF that the commission rescinded based on fraud. Further, relator seeks a writ directing the commission to issue a new order in which it (1) denies termination of PTD compensation and DWRF payments, (2) grants relator's appeal and orders that the bureau's determination may not recover the overpayments from claimant, and (3) states that R.C. 4123.511(J) is not applicable to the recovery of any of the overpayments.
Findings of Fact:
1. In 1981, James Menough ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for a low back injury involving L-5 radiculopathy with right foot drop.
2. In 1990, claimant was awarded TTD compensation beginning January 4, 1990 and ending November 12, 1990.
3. Also in 1990, the commission awarded PTD compensation to commence on November 13, 1990.
4. In 1997, the bureau opened an investigation based on information that claimant was working. In local court records, investigators found a registration form for the Glenwood Jail Alcohol Program on which claimant listed Copen Machine as his "employer." In addition, on a petition for occupational driving privileges, notarized on August 11, 1993, claimant certified that the suspension of his driver's license was a hardship because it "seriously affects my ability to continue employment." On that petition, he certified that his employer was Copen Machine.
5. When the investigators went to Copen Machine, they observed claimant cutting the grass. Investigators interviewed claimant, who later made a written statement regarding his activities at Copen Machine, including the following:
 [My] tasks consist of writing business checks to pay invoices, I type invoices, file invoices, open the mail and distribute to the appropriate areas, make bank deposits, payroll, mows the lawn open the office in the mornings (I have a key to this office), and I input data into the computer. * * * When I write business checks I sign my name to the checks. I am a signer on Copen Machine Shops business checking account. I perform payroll functions, I usually complete this function and write checks more than Terry Copen, the owner. * * * [sic]
Claimant also told investigators that he arrived each morning by 7:30 a.m. and that he left each day at about 2:30 p.m., with a lunch break. He explained that he often drove to the post office and the office supply store. However, claimant asserted that these tasks were not "work" and that he was not paid. He said his wife did some work for the company at home, for which she was paid $600 to $700 per month. He explained that she did not come into the office and that he took paperwork home for her to sort and review. He stated that, on weekends, they went together to collect the mail and take it to the office.
6. Mr. Copen stated that he and claimant had formerly been business partners in a company called C M Machine. Mr. Copen stated that claimant had loaned him money in 1985 or 1986. Mr. Copen explained that he had owned Copen Machine since 1990, and that claimant had been coming to the company on a daily basis since that time except during vacations. Mr. Copen said that claimant answered the phone, wrote business/payroll checks, and input information into the computer.
7. In the company's files, investigators found checks from Copen Machine to claimant for thousands of dollars. In addition, there were numerous checks written to "Cash" that were signed by claimant as having been cashed by him, and these checks also amounted to thousands of dollars. Claimant asserted that he received this money from Mr. Copen to repay an old debt and to reimburse him for travel expenses and other business expenses.
8. In October 1997 and October 1998, the bureau sent letters to claimant asking if he had worked in the last year and asking the name of the employer. Claimant answered no, that he was not working. He left blank the space for listing an employer and returned the signed forms to the bureau.
9. In February 2000, the bureau filed a motion asking the commission to terminate PTD, to declare overpayment of PTD compensation and DWRF payments, and to declare fraud. The bureau also sought a determination that claimant was not entitled to TTD compensation received after January 4, 1990, and to declare an overpayment of TTD compensation.
10. On March 15, 2000, a hearing was held on the bureau's motion. On April 18, 2000, the hearing officer mailed an order deciding as follows, in pertinent part:
 The Bureau of Workers' Compensation, hereinafter referred to as the BWC, learned that Mr. Menough might be working, so the BWC launched an investigation. The investigation department checked the local court records and found that the claimant has listed Copen Machine as his employer when receiving a traffic citation for DWI in 1993. This citation resulted in the claimant losing his driving privileges. In an effort to obtain occupational driving privileges, the claimant presented a notarized statement to the court wherein he again listed Copen Machine as his employer. On July 22, 1999, an investigator went to Copen Machine. Upon arrival the claimant was observed cutting grass on a riding lawn mower. Finally, the BWC's investigator interviewed the claimant and obtained his statement.
 According to the claimant's statement, he was not employed by Copen Machine. However, he admitted that he went to Copen Machine's office every working day except when he took vacation. While at the office his activities consisted of answering the telephone, writing invoices, filing invoices, and writing checks for various business expenses, including checks for the company's payroll. He admits that he arrived at Copen Machine's premises between 7:00 a.m. and 7:30 a.m. each morning. He would leave at some point during the day for approximately one hour. At approximately 2:30 p.m. each day, he would leave to return home. Although the claimant asserts that he was not paid for any of the services he performed, he admits that he received thirty-one cents per mile as reimbursement for travel expenses whenever he went to the office supply store or to the post office.
 The BWC contends that the observations made by its investigator, the admissions contained in the claimant's statement, as well as the checks the claimant drew on Copen Machine's account, all constitute evidence the claimant was employed by Copen Machine. Based upon this evidence, the BWC seeks an order declaring the claimant overpaid and finding that he fraudulently received permanent total disability benefits from November 13, 1990, to the present.
 The claimant contends that his daily activities at Copen Machine did not constitute work. He asserts that he only performed the services at Copen Machine so that he would have something to do. He denies receiving any money for his services.
 The claimant also asserts that he and Mr. Copen are very good friends. In fact, the two of them were in business together from 1985 to early 1990. In 1990 their business was dissolved. Thereafter, Mr. Copen went into business for himself. When Mr. Copen ran short of cash the claimant loaned him thirty-two thousand dollars to purchase some equipment. The claimant maintains that all checks he drew on Copen Machine's account for seven hundred eighty-one dollars and twenty-one cents constitute repayment of the loan. All other checks were for petty cash and were used to make small purchases for the business.
 The claimant brought in Mr. Copen as a witness. According to Mr. Copen's testimony, the claimant was a trusted friend who at one time had a significant alcohol problem. He felt that the claimant should have some meaningful daily activity so he allowed the claimant to come to his office each day. He confirms that the claimant performed various office duties while at the shop. However, he denies that any employer-employee relationship existed between him and the claimant. He also confirms that the claimant was not paid for any of the services that he performed.
 The claimant's attorney has also submitted a brief in opposition to the BWC's motion. Therein, he asserts that State ex rel. Nye v. Indus. Comm. 22 Ohio St.3d 275
(1986) defines substantially gainful employment as full-time work. He argues that the activities the claimant was involved in do not equate to full-time work. Since these activities are not full-time work, they do not bar the receipt of permanent total disability benefits.
 The Staff Hearing Officer does not find the claimant's attorney's argument persuasive. Nye does not stand for the proposition that only full-time work bars the receipt of temporary total benefits. In Nye the Supreme Court held that termination of a employee's temporary total benefits was proper when an employee was unable to return to his former position of employment, but returned to work as a self-employed furniture maker. In coming to this conclusion, the Supreme Court was responding directly to the appellee's argument that temporary total benefits could be terminated only if the claimant returned to work at his former position of employment. In response the Court said, "We agree with the appellant that this interpretation is erroneous. If accepted, it would permit the payment of temporary total benefits to a claimant who has chosen to return to full-time work at a job other than his former position of employment." Id. at 76.
 The Staff Hearing Officer also finds that Nye is not relevant in this case because it involved the right to receive temporary total benefits. The issue in this case is the claimant's entitlement to permanent total benefits.
 The claimant also relies on State ex rel. Midmark v. Industrial Commission, 78 Ohio St.3d 2. According to the claimant Midmark states that evidence of work amenable activities performed by the claimant is not evidence that the claimant can return to work. Therefore, the claimant contends that the duties he performed at Copen do not constitute evidence that he is capable of performing sustained remunerative employment.
* * *
* * * [Extensive review of Midmark facts and holdings].
 This case is unlike Midmark because the evidence demonstrates that the claimant performed clerical duties over a period of years at Copen Machine. The evidence also demonstrates that the claimant's activities were not sporadic but were done on a daily basis. Midmark is clearly distinguishable from the facts herein; therefore, its holding does not apply to the facts in this case.
 The Hearing Officer finds that the claimant herein regularly performed clerical duties for Copen Machine. The duties he performed would normally be performed by a receptionist/bookkeeper. Further, Mr. Menough's claim that he received no compensation is not credible in light of the fact that he was paid per mile for any business trips he made. In addition he drew money checks on the company's account during the time he performed regular duties for the company. Mr. Menough claims that most of the money he received was for repayment of an outstanding loan yet he produced no checks to substantiate this claim.
 In light of the foregoing facts, the Hearing Officer finds that the claimant was working for Copen Machine from November 13, 1990, to the present. Therefore, the claimant was not entitled to permanent total disability payments. The Staff Hearing Officer hereby declares all permanent total disability awards paid from November 13, 1990, to the present an overpayment.
The commission then addressed the issues of fraud and reimbursement:
 The last issue to be resolved is whether or not the claimant committed fraud. The claimant stated that he knew it was unlawful to receive permanent total benefits while working. In addition to all of the permanent total disability checks, he signed at least two letters wherein he clearly indicated he had not been working. The claimant continues to assert he was not working; however, this Hearing Officer finds that the claimant had a duty to notify the BWC of his work activity. He failed to notify the BWC and submitted false statements wherein he indicated he was not working. These statements were submitted for the purpose of obtaining benefits that the claimant knew or should have known he was not entitled to. The BWC justifiably relied on the claimant's statements and thereby made wrongful payments.
 Based upon the above-stated facts, the Hearing Officer finds that the overpayments made from November 13, 1990, were caused by the claimant's fraud. Therefore, the overpayments are to be collected pursuant to the fraud provision contained in Ohio Revised Code 4123.511(J).
11. In May 2000, the hearing officer issued a supplemental order, reciting the entirety of the April 2000 order and then adding these supplemental findings and conclusions:
 * * * [T]he Claimant was found to have fraudulently received Permanent Total Disability benefits because he was working during the time he received Permanent Total Disability payments.
 The Bureau of Workers' Compensation had also requested that the Hearing Officer find that the Claimant fraudulently procured temporary total benefits from January 4, 1990 to November 12, 1990 inclusive. Through oversight, this Hearing Officer did not rule on the temporary total issue.
 This supplemental order is being issued without further hearing as all relevant evidence was considered and the parties addressed the Claimant's right to receive temporary total benefits at the March 15, 2000 hearing.
 Based upon the findings contained in this Staff Hearing Officer's order issued on April 18, 2000 as well as the fact that the Claimant admits to commencing office duties at Copen's Machine Shop since sometime in 1989, the Hearing Officer finds that the Claimant has been working since 1989.
 The Hearing Officer further finds that the Claimant fraudulently procured temporary total benefits from January 4, 1990 to November 12, 1990 because he knew he could not work and draw total disability benefits; yet, he continued to work and accept temporary total payments.
 Based upon the foregoing facts, this Hearing Officer finds the Claimant is overpaid temporary total benefits from January 4, 1990 to November 12, 1990, inclusive. The Hearing Officer further finds that the Claimant's failure to disclose his work activity constitutes fraud, therefore, the Bureau of Workers' Compensation is entitled to recoup the overpayment in accordance with the fraud provisions of Ohio Revised Code Section 4123.511(J).
 When this Hearing Officer adjudicated the Claimant's entitlement to temporary total benefits she was sitting as a District Hearing Officer.
12. On June 2, 2000, claimant filed an appeal.
13. Because the TTD rulings had been made by the hearing officer sitting as a district hearing officer ("DHO"), the appeal regarding TTD was addressed separately as an appeal from a DHO order. On July 27, 2000, a hearing was held on this appeal, resulting in the following order regarding the TTD issues:
 For clarification, the issue today involves the Claimant's appeal regarding the overpayment of temporary total compensation from 1-04-90 through 11-12-90.
 Claimant's Counsel indicated at hearing the period of temporary total compensation deemed overpaid is not disputed; However, the Claimant disputes the method of collection. Claimant's Counsel contends the overpayment of temporary total compensation should not have been ordered collected pursuant to Ohio Revised Code Section 4123.511(J). This contention is without merit.
 The Staff Hearing Officer concurs with the District Hearing Officer's findings regarding the collection method ordered on 3-15-00. The District Hearing Officer ordered the temporary total compensation collected pursuant to the fraud provisions of Ohio Revised Code Section 4123.511(J). The Staff Hearing Officer relies upon the Industrial Commission Policy Memorandum Statement #U3. This policy memorandum mandates that the hearing officer shall make a specific finding of overpayment and declare the officer shall make a specific finding of overpayment and declare the overpayment collected pursuant to Ohio Revised Code Section 4123.511(J). Thus, the Staff Hearing Officer concludes the District Hearing Officer order complies with the Industrial Commission policy and is affirmed.
In regard to the appeal of the PTD and DWRF (which was, in essence, not an "appeal" but a request for reconsideration of a PTD order), the hearing officer stated that they would be referred for separate hearing:
 * * * [T]he Claimant's appeal filed 6-02-00 is referred to the Industrial Commission.
 * * * [T]he Claimant is appealing the decision by the Staff Hearing Officer from the hearing on 3-15-00.
14. On August 10, 2000, the commission refused appeal of the July 27, 2000 order by the staff hearing officer regarding TTD issues.
15. On September 22, 2000, the bureau mailed to claimant a calculation of the amount of the overpayment and the method of collection, as follows:
 * * * [T]he Industrial Commission of Ohio (IC) issued orders in Claim 81-24578 that terminated the injured worker's Permanent Total Disability (PTD) and Disabled Workers' Relief Fund (DWRF) Benefits effective 11/13/1990. These orders also found an overpayment of Temporary Total (TT) disability from 1/4/1990 through 11/12/1990. Thus, an overpayment exists in this claim. * * *
The bureau then listed the amounts overpaid for PTD, DWRF, and TTD, which totaled more than $120,000. The bureau then stated:
 The total overpayment is due and payable upon receipt of this notification. Checks should be made payable to the Bureau of Workers' Compensation and mailed to P.O. Box 15187, Columbus, Ohio 43215-9748, Attn: Recovery.
 Please include your claim number on the check or money order to insure proper credit to your account.
The bureau further stated that, in regard to any current or future benefits that would be payable to claimant, the bureau would take 100% of such payments in recovery of the overpayment, "except as ordered under O.R.C. 4123.511(J)."
16. Claimant filed an appeal in regard to the September 22, 2000 notice from the bureau. In December 2000, the matter was decided by a staff hearing officer as follows:
 For clarification, the issue today involves claimant's appeal from the correspondence from the Bureau of Workers' Compensation dated 9/22/2000. This correspondence out-lines the overpayment of compensation that has been paid to the claimant.
 Per claimant's counsel, the claimant does not dispute the specific amount of overpayment as calculated by the Bureau of Workers' Compensation. * * *
 The Staff Hearing Officer finds the claimant objects to the part of the Bureau of Workers' Compensation correspondence dated 9/22/2000 wherein the Bureau of Workers' Compensation indicates "ALL recovery from any current or future benefits will be made at 100%, except as ordered under O.R.C. 4123.511(J)." The Staff Hearing Officer affirms this part of the order as it relates to the amount of temporary total compensation declared overpaid. The issue regarding the method used to collect the overpayment of temporary total compensation has been adjudicated by the Industrial Commission. This issue was addressed by the Staff Hearing Officer on 7/27/2000 and the Industrial Commission on 8/11/2000. Thus, the Staff Hearing Officer affirms the method of recovery noted on the Bureau of Workers' Compensation correspondence dated 9/22/2000 as related to temporary total compensation.
17. In January 2001, the commissioners unanimously denied further consideration of the PTD/DWRF decision mailed on April 25, 2000, which had been appealed in June 2000.
Conclusions of Law:
Claimant contends that the commission abused its discretion in terminating PTD compensation and declaring an overpayment of PTD/DWRF payments. Further, claimant argues that the commission abused its discretion in deciding the manner of reimbursement of the overpayment. In regard to TTD compensation, it appears that claimant does not challenge the finding that he was overpaid but challenges the decision that the bureau can collect the overpayment from him.
Specifically, claimant contends that the commission abused its discretion because: (1) to terminate PTD compensation, the commission is required to find that claimant engaged in sustained remunerative employment, and it made no such finding in its order, and, in addition, there is no evidence to support such a finding; (2) the commission did not have "clear and convincing" evidence of fraud; (3) the evidence does not prove that claimant was paid for his activities, and, therefore, he was not engaged in "gainful" or "remunerative" employment; (4) there was strong evidence that claimant's activities at Copen Machine were merely recreational and/or therapeutic and were not "work" or "employment;" thus rendering the commission's findings an abuse of discretion; and (5) there is no medical evidence establishing that claimant is capable of sustained remunerative employment. In addition, claimant contends that (6) the commission abused its discretion in concluding that the bureau could require him to repay the funds he obtained through fraud.
Several established principles apply to the court's consideration of claimant's request for a writ of mandamus. First, after the commission has issued a final order awarding PTD compensation, the commission has authority to modify the order when circumstances warrant. In State ex rel. Smothers v. Mihm (1994), 69 Ohio St.3d 566, the court observed that the lifetime nature of a PTD award does not mean that the award is immune from later review. If the claimant is working or "engaging in activity inconsistent with his permanent total disability status," the commission may exercise jurisdiction under R.C. 4123.52 to terminate PTD compensation. Id. See, also, State ex rel. Frazier v. Conrad (2000),89 Ohio St.3d 166.
Courts have held that the commission may terminate PTD based on a finding that the claimant (1) has engaged in activities inconsistent with permanent total disability, (2) has engaged in sustained remunerative employment, or (3) is capable of engaging in some form of sustained remunerative employment. See Smothers, supra; State ex rel. Schultz v. Indus. Comm. (Nov. 28, 2000), Franklin App. No. 00AP-166, unreported (Memorandum Decision) (upholding termination of compensation based on activities inconsistent with PTD where there was evidence of part-time work activities but no evidence of pay); State ex rel. Holt v. Indus. Comm. (Oct. 26, 2000), Franklin App. No. 00AP-1, unreported (Memorandum Decision) (upholding termination of PTD where there was evidence of recreational/sports activities inconsistent with PTD but no evidence of work activities nor any evidence of paid employment).
Therefore, according to the holdings in Smothers, Schultz and Holt, the commission is not required to find, in order to terminate PTD, that claimant was engaged in gainful employment or any employment at all. Engaging in activities inconsistent with permanent total disability is sufficient.
Further, the term "sustained remunerative employment" has not been interpreted as narrowly as claimant asserts. The Ohio Supreme Court has held that part-time employment constitutes sustained remunerative employment. State ex rel. Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360,362. The court upheld a commission order in which it found a claimant capable of sustained remunerative employment when he was able to work more than four hours per day. State ex rel. DeSalvo v. May Co. (June 29, 1999), Franklin App. No. 98AP-986, unreported (Memorandum Decision), affirmed (2000), 88 Ohio St.3d 231.
Further, in order to terminate PTD, the commission need not have a medical report stating that the claimant is capable of sustained remunerative employment. When there is evidence that claimant has actually engaged in certain physical activities, it is not necessary to have an expert opinion that the claimant is capable of performing those activities. State ex rel. Beal v. Indus. Comm. (Dec. 12, 1996), Franklin App. No. 95AP-1267, unreported (Memorandum Decision). Likewise, a medical opinion that claimant is incapable of certain activities is impeached by evidence showing that claimant actually performed those activities. Id.
In regard to TTD compensation, it is settled that a claimant cannot receive TTD compensation while performing gainful work, including part-time or occasional work, regardless of whether the number of hours is minimal or whether any profit was realized by a self-employed worker. E.g., State ex rel. Blabac v. Indus. Comm. (1999), 87 Ohio St.3d 113; State ex rel. Durant v. Superior's Brand Meats, Inc. (1994),69 Ohio St.3d 284; State ex rel. Johnson v. Rawac Plating Co. (1991),61 Ohio St.3d 599; State ex rel. Brown v. Indus. Comm. (Nov. 5, 1998), Franklin App. No. 97APD11-1452, unreported (Memorandum Decision); State ex rel. Dawson v. Indus. Comm. (Nov. 19, 1998), Franklin App. No. 97APD11-1544, unreported (Memorandum Decision).
In the present action, the magistrate concludes that the commission was within its discretion to conclude that claimant was not entitled to the PTD and DWRF benefits he received. The commission cited reliable, probative and substantial evidence in support of its decision to terminate these benefits, and it provided a reasonable explanation of its rationale.
Specifically, the commission relied on evidence that claimant performed work activities about six hours per day for about ten months each year beginning in 1990 when his former partner began Copen Machine. The commission's findings were supported by claimant's testimony regarding the nature and extent of his duties, the report of the investigators, and Mr. Copen's statements about claimant's activities. The activities were the sort of tasks for which a person can be paid, in that he provided valuable and necessary services for a business enterprise.
The fact that a claimant is not paid for work activities does not mean that the activities will not support a termination of PTD. For example, if a PTD recipient were donating clerical services to a charity five hours per day, five days per week, that activity could be found "inconsistent with" the receipt of PTD, or could be found to demonstrate the capability of performing sustained remunerative employment, regardless of the fact that no monetary gain was involved.
Moreover, in the present action, the commission did not accept that claimant was donating his services but found instead that the work was gainful, relying on documentary evidence of numerous payments from Copen Machine and rejecting claimant's testimony regarding the nature of those payments. Such determinations of evidentiary weight and credibility lie outside the scope of mandamus inquiry. State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18.
In summary, the commission was within its discretion to conclude that claimant was working at Copen Machine, that the work was gainful, and that his activities were inconsistent with an award of PTD.
The magistrate further concludes that the commission's order is not defective because it did not use the specific words "inconsistent with the award of PTD" but expressed that meaning in other words. The commission's rationale was clear — that the extent of claimant's work activities was inconsistent with an award of PTD. Moreover, its rationale was in accord with the principles outlined in decision such as Smothers, Schultz and Holt; supra.
The commission also found that claimant's receipt of these benefits was fraudulent. The commission relied on claimant's affirmative statements to local police and courts certifying that Copen Machine was his "employer." The commission also relied on claimant's statements to the bureau expressly denying that he had an employer. There was evidence, including evidence from claimant himself, that he provided regular and valuable business services to a company and received thousands of dollars from the company. The magistrate need not determine whether "clear and convincing" evidence is necessary to support an administrative finding of fraud, because, even if that standard were applicable, the commission relied on sufficient evidence satisfying that standard.
In regard to TTD compensation, the commission was within its discretion to find that claimant received TTD compensation while engaged in gainful work and to conclude that claimant was not entitled to the payments he received for 1990. It appears that claimant does not dispute this conclusion but disputes that the bureau can require him to repay compensation.
Accordingly, the magistrate turns to the question of whether the bureau can lawfully require a fraudfeasor to repay funds he received through his fraud. Specifically, the question is whether the commission abused its discretion in concluding that the bureau may recover the overpayments from claimant himself.
Claimant contends that R.C. 4123.511(J) did not apply to the recovery of these overpayments because it was not in effect until October 1993. Claimant notes that his injury occurred in 1981 and that the rescinded compensation was awarded in 1990.
This court has repeatedly held that, when determining the law to apply to recovering an overpayment of compensation, the commission must apply the law in effect at the time the compensation was awarded. E.g., State ex rel. Abate v. Indus. Comm. (Aug. 3, 2000), Franklin App. No. 00AP-849 (Memorandum Decision); State ex rel. Burns v. Ameritech Services (June 29, 1999), Franklin App. No. 98AP-1000, unreported (Memorandum Decision); State ex rel. Farwick v. Hoover Co. (Feb. 11, 1999), Franklin App. No. 97AP-1708, unreported (Memorandum Decision); State ex rel. Hoover Co. v. Indus. Comm. (Oct. 29, 1998), Franklin App. No. 97AP-1365, unreported (Memorandum Decision); State ex rel. Cable v. Montgomery Cty. Personnel (Oct. 22, 1996), Franklin App. No. 95AP-737, unreported (Memorandum Decision).
Here, the commission awarded compensation in 1990 that was later rescinded. Thus, the commission must apply the law that was in effect in 1990.
Prior to the enactment of R.C. 4123.511(J), a claimant was not required to reimburse the bureau for overpaid compensation when the compensation was paid by the bureau in the good-faith belief that it was due to claimant, and accepted by the claimant in the good-faith belief that it was due to him. See, e.g., State ex rel. Martin v. Connor (1984),9 Ohio St.3d 213 (indicating that an award based on certain types of mistakes would not be recouped from the claimant but that, where compensation was received due to claimant's "fraud or imposition," the overpayment could be recouped from claimant).
In addition, this court ruled in State ex rel. RMI Co. v. Indus. Comm. (June 28, 1990), Franklin App. No. 89AP-639, unreported opinion, that the bureau may obtain reimbursement from the claimant when the overpayment resulted from claimant's fraud:
 * * * R.C. 4123.515 allows for reimbursement under certain circumstances from the state insurance fund. * * * And, under limited circumstances such as fraud by the claimant * * *, recoupment can be made from the claimant. * * *
R.C. 4123.515 provided that benefits and compensation would be paid following the decision of the district hearing officer unless an administrative appeal was taken, during which appeal benefits and compensation would be withheld, but the statute further provided that, where the ruling at the next level was in favor of claimant, then benefits and compensation would be paid (by the bureau or self-insured employer) whether or not further appeal was taken. If, however, the claim was subsequently denied in whole or in part, the overpayment was charged to the surplus fund or, in the case of a self-insured employer, the amount was repaid to the employer from the surplus fund.
In addition, former R.C. 4123.519 contained provisions regarding court determinations, providing that, in the event compensation was paid that should not have been paid "under the decision of the appellate court," the amount of the overpayment would be charged to the surplus fund or, in the case of self-insured employer, the amount would be repaid to the self-insurer from the surplus fund.
R.C. 4123.515 and R.C. 4123.519 were designed to protect injured workers from mistakes made by the bureau or commission, in that the statutes provided for payment of benefits during the pendency of appeals, with no recoupment from the claimant if awards were reversed administratively or judicially. The statutes also protected employers by charging overpaid amounts to the surplus fund and reimbursing the overpaid amounts to self-insured employers. Id. R.C. 4123.515 and4123.519 were repealed by the legislation that enacted R.C. 4123.511(J), which sets forth a method whereby overpayments (including those resulting from mistakes such as clerical errors) are repaid by withholding a portion of present and future benefits until the overpaid amount is paid back.
Even though R.C. 4123.515 and 4123.519 were in effect at the time the rescinded benefits were awarded, the limited circumstances set forth in those statues are not present here. The law set forth in RMI and Martin applies to circumstances involving recovery of overpayments resulting from claimant's fraud.
Accordingly, the magistrate concludes that the bureau's citation to and reliance on R.C. 4123.511(J) constituted mistakes of law. However, the commission did not abuse its discretion in upholding the bureau's demand for reimbursement from claimant pursuant to decisions such as RMI and Martin.
Accordingly, a writ of mandamus is appropriate but only to a limited extent. In claimant's appeals and request for reconsideration challenging the April 2000 order, claimant was correct that R.C. 4123.511(J) did not govern the recoupment of these overpayments, and the commission had a duty to grant claimant's appeals and reconsideration request to that extent.
The magistrate acknowledges the commission's argument that no writ should issue because the record includes no evidence of any collection efforts by the bureau that violate the law in effect in 1990 or that would constitute an abuse of discretion under that law. The commission argues that none of its orders purport to impose or approve a method of recoupment that was unlawful or an abuse of discretion in 1990.
At oral argument, the commission presented a copy of an interoffice communication setting forth the law and policies applicable in 1990 to recoupment of overpayments, and the commission argued that, even if R.C.4123.511(J) did not apply, the bureau was within its discretion under the law prevailing in 1990 to recoup the overpayments in the ways identified by the bureau in its letter. The commission asserts that, when the bureau requested full payment and stated that it would offset any current or future benefits against the overpayment, it was acting within the law in effect in 1990. The commission further contends that mere citation to the wrong statute does not constitute an abuse of discretion and that, even if its citations to R.C. 4123.511(J) were incorrect, they were harmless error.
The magistrate recognizes that the record includes no evidence of any collection efforts by the bureau nor approval by the commission of any specific methods of recoupment. Nonetheless, the commission had a duty to correct its erroneous reliance on inapplicable law when requested by claimant to do so, and it did not perform that duty. Further, a commission order setting forth reliance on an inapplicable statute does not comply with its duty to provide an adequate order and rationale, a duty imposed in decision such as State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
In sum, the magistrate recommends that the court issue a limited writ of mandamus ordering the commission to amend its orders of December 2000, August 2000, December 2000, and January 2001, and must grant claimant's appeals and request for reconsideration to the extent that its citation to and reliance on R.C. 4123.511(J) were contrary to law.
 PATRICIA DAVIDSON MAGISTRATE