PAYPHONE ASSOCIATION OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE; SBC OHIO, INTERVENING APPELLEE AND CROSS-APPELLANT.

[Cite as *Payphone Assn. v. Pub. Util. Comm.*, 109 Ohio St.3d 453, 2006-Ohio-2988.]

(No. 2004–2128—Submitted October 25, 2005—Decided June 28, 2006.)

---

PFEIFER, J.

## INTRODUCTION

{¶ 1} Appellant and cross-appellee, Payphone Association of Ohio ("PAO"), and cross-appellant and intervening appellee, SBC Ohio,[1] appeal as of right from orders of appellee Public Utilities Commission of Ohio ("PUCO") that establish rates charged by SBC Ohio to its competitors for pay-phone services. We conclude that the PUCO did not commit reversible error, we reject all claimed errors, and we affirm the orders.

## BACKGROUND

{¶ 2} The Telecommunications Act of 1996, Section 151 et seq., Title 47, U.S.Code (the "1996 Act"), which significantly restructured the telecommunications industry, included a provision addressing pay-phone services. Section 276, Title 47, U.S.Code ("Section 276"). Section 276 was intended to ensure that a local exchange carrier ("LEC") did not subsidize its own pay-phone service, either directly or indirectly, and did not discriminate in favor of its own pay-phone service. On September 20, 1996, the Federal Communications Commission ("FCC") released *In re Implementation of the Pay Tel. Reclassification & Comp. Provisions of the Telecommunications Act of 1996* (1996), 11 Fed. Communications Comm. Record 20541 (*Pay Tel.*), to implement Section 276. The FCC's order established procedures to insure that LECs provided pay-phone services to competitors under the same terms and conditions that they provided services to their own pay-phone operations. Id.

{¶ 3} On reconsideration, the FCC required LECs to provide independent pay-phone-service providers the option of using either "smart" pay phones, which are instrument-implemented,[2] or "dumb" pay phones.[3] *Pay Tel.*, 11 Fed. Communications Comm. Record 21233. The order also required LECs to file cost-based tariffs for both types of pay-phone service with their state commissions. If an LEC already had filed tariffs for these services, a state commission could conclude that the tariffs complied with the requirements of Section 276 and the FCC's orders. In that event, further filings were not required. Id.

---

1. SBC Ohio is a registered trade name of the Ohio Bell Telephone Company. SBC Ohio was formerly known as Ameritech Ohio.

2. An instrument-implemented telephone contains all the circuitry required to execute coin acceptance and related functions within the instrument itself and does not require coin-service signaling from a central office.

3. A central-office-implemented telephone requires coin-service signaling from a central office.

{¶ 4} On December 9, 1996, the PUCO initiated the proceedings below to implement Section 276 and the FCC's decisions regarding pay-phone services. Shortly thereafter, the PUCO directed all LECs operating within Ohio to file tariffs with the requisite access-line provisions for smart and dumb pay phones. The same entry noted that the PUCO had recently approved a pay-phone tariff for dumb pay phones for then Ameritech Ohio.

{¶ 5} In May 1997, the PUCO instructed each Ohio LEC to review its pay-phone tariff to ensure that it was consistent with the requirements of Section 276 and the FCC decisions. LECs were ordered to file proposed tariff amendments by June 22, 1997. SBC Ohio filed a letter verifying that its previously approved pay-phone tariffs complied with the requirements. The PUCO issued an entry on September 25, 1997, stating that the pay-phone tariffs of SBC Ohio and numerous other LECs complied with all federal and state requirements.

{¶ 6} On January 28, 1999, the PUCO granted the PAO's request for an evidentiary hearing. The PUCO also stated that all approved tariffs would remain in effect. The hearing date, which was originally scheduled in 2000, was indefinitely continued while discovery disputes were resolved.

{¶ 7} Before the hearing was held, on January 31, 2002, the FCC released *In re Wisconsin Pub. Serv. Comm.* (2002), 17 Fed. Communications Comm. Record 2051 (*"Wisconsin PSC"*). This order revised and clarified the previous FCC decisions regarding pay-phone services. In *Wisconsin PSC*, the FCC determined that Bell Operating Companies ("BOCs") were required to set pay-phone-line rates in compliance with a cost-based, forward-looking "new services test" ("NST"). The NST set the direct cost of providing a new service as a price floor and then allowed a reasonable amount of overhead to arrive at the overall price of the new service. The FCC also determined that it did not have jurisdiction over the pay-phone-line rates of LECs that were not BOCs.

{¶ 8} In compliance with *Wisconsin PSC*, the PUCO dismissed all non-BOC LECs from the proceeding. The PUCO then revised the issues to be considered at hearing. The PUCO also issued interim rates that became effective January 30, 2003.

{¶ 9} The evidentiary hearing began on January 29, 2004. After briefing by the parties, the PUCO issued its decision on September 1, 2004. The PUCO accepted the cost studies offered by SBC Ohio, except for the proposed overhead loadings,[4] and found that it was appropriate to apply unbundled-network-element ("UNE")[5] overhead loadings rather than those obtained by SBC Ohio's use of the

---

4. The overhead loading is the amount by which the price or the proposed rate exceeds the direct cost. An overhead-loading factor is the overhead loading divided by the direct cost.

5. The UNE methodology bases overhead allocations for pay-phone-line services on the overhead allocations approved for UNE services.

Physical Collocation Tariff Order ("PCTO") June 28 [6] methodology. This appeal followed.

## PAO'S APPEAL

### First Claimed Error

{¶ 10} PAO argues that the PUCO did not comply with federal and state law when it approved SBC Ohio's pay-phone tariff without the telephone company ever filing a tariff that complied with the NST.

{¶ 11} PAO is correct in stating that SBC Ohio did not file new tariffs following the PUCO's December 19, 1996 entry. A new filing was unnecessary, however, because SBC Ohio had already filed tariffs for smart pay phones on April 9, 1985, in case No. 84–834–TP–ATA, and for dumb pay phones on September 19, 1996, in case No. 96–844–TP–ATA. The PUCO recognized that SBC Ohio had filed tariffs for dumb pay phones when it issued the December 19, 1996 entry. In Finding Five of that entry, the PUCO stated: "In addition, the Commission observes that it has recently approved an Ameritech application to provide payphone access lines to dumb payphones (Case No. 96–844–TP–ATA)."

{¶ 12} The FCC had previously determined, however, that when LECs had already filed tariffs for pay-phone-line rates, the state commissions could conclude that those existing tariffs were consistent with the requirements of Section 276 and other FCC requirements and that no further tariff filing would be required. *Pay Tel.*, 11 Fed. Communications Comm. Record 21233, ¶ 163. Because Ameritech Ohio, the predecessor of SBC Ohio, had previously filed pay-phone-line rates that were consistent with Section 276 and other FCC requirements, no further tariff filing was required.

{¶ 13} On May 22, 1997, the PUCO issued an entry indicating that the pay-phone-line tariffs of all LECs, including SBC Ohio, had become effective on or before April 15, 1997. In the same entry, the commission ordered all LECs to review their pay-phone-line tariffs for compliance with Section 276 and with other requirements of the FCC and the PUCO. SBC Ohio made a directed tariff review and submitted its review to PUCO staff for approval. PUCO staff recommended approval. On September 26, 1997, the PUCO found that SBC Ohio's pay-phone tariffs that were in effect in 1997 satisfied the requirements of Section 276 and the FCC's orders, stating: "The Commission's Staff has reviewed the proposed tariff filings of the carriers identified in Finding (4); has concluded that they are consistent with the requirements of the 1996 Act, the FCC's

---

6. Under the PCTO methodology, the direct cost of a comparable and competitive service is calculated. Overhead loading is then calculated by determining the difference between the direct cost and the lowest rate of service, including volume and term discounts.

decisions in CC Docket No. 96–128, and the Commission's May 22, 1997 Entry in this proceeding, and recommend their approval by the Commission.

{¶ 14} "The Commission concurs in Staff's recommendation and, therefore, finds these applications shall be approved."

{¶ 15} Because the PUCO had already reviewed SBC Ohio's tariffs and found them to be consistent with the 1996 Act, no further pay-phone-tariff filings needed to be made at that time. We reject the first claimed error.

## Second Claimed Error

{¶ 16} PAO asserts that when the PUCO determined in January 2004 that SBC Ohio's existing pay-phone-tariff rate had to be reduced because it failed to meet the reasonableness standard of the NST, the PUCO was required to expressly find that the pay-phone tariff in effect in 1997 violated the FCC pricing standard and its own standard and was inconsistent with the 1996 Act. The PUCO refused to address the issue of refunds for any period before the interim tariff rates were approved in 2003, finding that the issue had been previously considered in the proceedings and that PAO had not presented any new facts or questions of law. The PUCO's conclusion is reversible on appeal only if manifestly against the weight of the evidence. *Baltimore & Ohio RR. Co. v. Pub. Util. Comm.* (1986), 22 Ohio St.3d 275, 22 OBR 447, 490 N.E.2d 888, syllabus. See *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 268, 527 N.E.2d 777. Moreover, this court will not substitute its own opinion for that of the PUCO on questions of fact. *Pennsylvania RR. Co. v. Pub. Util. Comm.* (1933), 126 Ohio St. 260, 262, 185 N.E. 49. Accord *Consumers' Counsel v. Pub. Util. Comm.* (1983), 4 Ohio St.3d 111, 112, 4 OBR 358, 447 N.E.2d 749; *Consumers' Counsel v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 263, 264, 513 N.E.2d 243. With respect to this claimed error, we conclude that the determination by the PUCO is not manifestly against the weight of the evidence. We reject the second claimed error.

## Third Claimed Error

{¶ 17} PAO seeks reversal and remand of this cause with instructions to the PUCO to "enforce what SBC Ohio had voluntarily committed to do." The commitment PAO refers to is an alleged agreement by the BOCs, including SBC Ohio, to reimburse or provide a credit for pay-phone charges in the event the NST resulted in reduced tariff rates for pay-phone-line service. The purported commitment was contained in three letters, copies of which were supplied to the court by PAO. All three letters were addressed to staff members of the FCC or PUCO and bore dates between April 10 and May 16, 1997.

{¶ 18} PAO relies entirely on these letters to establish SBC Ohio's commitment to pay refunds back to 1997. The letters are not properly before the court,

however, and will not be considered in this appeal. The first two letters were filed with the PUCO as attachments to a PAO witness's direct testimony. The PUCO's attorney examiner granted SBC Ohio's motion to strike the letters because their introduction as evidence violated earlier orders in which the PUCO held that refunds for any period of time prior to the imposition of the interim rates were not within the scope of the proceedings. The PUCO affirmed its attorney examiner's ruling, striking the letters both on interlocutory appeal and on rehearing. The third letter was never introduced or proffered at the hearing. Instead, it was attached as an exhibit to PAO's application for rehearing, which was filed October 1, 2004. The PUCO found that the third letter could have been provided during the hearing, that it had not been, and that it was not part of the record.

{¶ 19} In its third and fourth claims of error, PAO makes substantive arguments based on these letters as if they were part of the record in this case. Because they were not in evidence, we disregard PAO's arguments concerning them. We reject the third claimed error.

## Fourth Claimed Error

{¶ 20} PAO argues that "[r]equiring SBC Ohio to live up to its commitment to provide reimbursement of overcharges would not constitute retroactive ratemaking." This argument anticipates an argument by SBC Ohio that refunding overcharges made before the interim rates were imposed in 2003 would amount to retroactive ratemaking. PAO argues that retroactive ratemaking presupposes the existence of a tariff that was duly filed and approved under applicable law. PAO then renews the faulty argument made in connection with its first two claimed errors that SBC Ohio's pay-phone tariff was never filed or approved.

{¶ 21} PAO's arguments are unconvincing. They rely on the erroneous premise that no tariffs were ever filed or approved. They also depend upon the existence of refund commitments by SBC Ohio that were not proven. We reject PAO's fourth claimed error.

## Fifth Claimed Error

{¶ 22} PAO argues that the PUCO applied the NST to Ameritech Ohio and dismissed all non-BOCs from the case without considering the consequences or whether the dismissal contradicted state policy. We conclude to the contrary that the PUCO's decision to dismiss all parties other than PAO and Ameritech Ohio from the proceedings complied with state and federal law and was a reasonable exercise of its discretion.

{¶ 23} The purpose of the PUCO's proceedings in this case was to implement Section 276 of the 1996 Act, which refers specifically to BOCs. The PUCO's decision to limit the scope of the pay-phone proceedings to SBC Ohio's tariffs was

in accord with *Wisconsin PSC,* 17 Fed. Communications Comm. Record 2051. In that case, the FCC examined Section 276 and determined that Congress had granted it authority only over the pay-phone-line rates of BOCs, such as SBC Ohio. Id. at ¶ 42. Therefore, the FCC required only BOCs, not all LECs, to charge cost-based rates for pay-phone lines. Id. See *New England Pub. Communications Council, Inc. v. Fed. Communications Comm.* (C.A.D.C.2003), 334 F.3d 69, 78 ("We must presume that when Congress referred to 'Bell Operating Companies' rather than 'local exchange carriers,' it acted deliberately").

{¶ 24} The PUCO's decision to limit the proceedings was reasonable, given that the proceeding was established to implement Section 276 of the Telecommunications Act and the relevant FCC decisions, which do not apply to non-BOCs. Moreover, the PUCO had already reviewed the pay-phone rates of numerous non-BOCs and had found them in compliance with the 1996 Act.

{¶ 25} PAO has cited no statutory or legal authority that requires the PUCO to apply a particular test to the pay-phone rates of non-BOC providers. The PAO points only to R.C. 4927.02, which states that it is the policy of Ohio to "[p]romote diversity and options in the supply of public telecommunications services and equipment throughout the state." The PAO has made no showing that there is a lack of diversity or options for pay-phone service in areas served by non-BOCs. As the agency with the expertise and statutory mandate to implement the statute, the PUCO is entitled to deference. *Constellation NewEnergy, Inc. v. Pub. Util. Comm.,* 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, at ¶ 51; *Migden–Ostrander v. Pub. Util. Comm.,* 102 Ohio St.3d 451, 2004-Ohio-3924, 812 N.E.2d 955, at ¶ 23. Neither state nor federal law requires the application of the NST to the pay-phone rates of non-BOCs. When a statute does not prescribe a particular formula, the PUCO is vested with broad discretion. *Columbus v. Pub. Util. Comm.* (1984), 10 Ohio St.3d 23, 24, 10 OBR 175, 460 N.E.2d 1117. The PUCO has determined that further review of non-BOC rates is not required at this time. That decision was lawful and reasonable. We reject the fifth claimed error.

## SBC OHIO'S CROSS–APPEAL

### First Claimed Error

{¶ 26} SBC Ohio argues that it is unlawful for the PUCO to exceed the scope of authority delegated to it by the FCC. We cannot quarrel with this self-evident statement. SBC Ohio, however, has failed to demonstrate that the PUCO exceeded its scope of authority.

{¶ 27} SBC Ohio argues that the PUCO erred in choosing a method to determine overhead loading when it established intrastate pay-phone-line rates. SBC Ohio correctly states that the FCC delegated to the states the authority to

require BOCs to file tariffs with state commissions and that the FCC indicated that it would rely on the state commissions to ensure that the tariffs complied with the requirements of Section 276. The FCC stated that any one of three methods of determining overhead loading could satisfy the NST: (1) the PCTO methodology; (2) the Open Network Architecture ("ONA") Tariff Order methodology; or (3) the UNE factors. *Wisconsin PSC,* 17 Fed Communications Comm. Record 2051, at ¶ 52–54. SBC Ohio chose the PCTO methodology.

{¶ 28} PAO advocated use of the UNE overhead loading, which produced lower overhead and, consequently, lower rates. The PUCO agreed with the PAO and adopted the UNE overhead-loading factor, concluding that the PCTO methodology "fail[ed] to rise to the reasonableness standard of the NST." On rehearing, the PUCO examined Section 276 and concluded that it was "insufficient to adhere blindly to the outcome of a particular methodology," that the outcome of any methodology had to be evaluated pursuant to a reasonableness standard, and that the overhead loadings produced by SBC Ohio's use of the PCTO methodology were not reasonable.

{¶ 29} SBC Ohio argues that the PUCO committed reversible error when it rejected the PCTO methodology because (1) the PCTO methodology has been deemed acceptable by the FCC and (2) one methodology should not be preferred to the others. The PUCO determined that the overhead-loading factors produced by the application of the PCTO methodology were "inordinately high for a competitive service" and, therefore, did not satisfy "the reasonableness standard of the NST." Having found SBC Ohio's proposed overhead-loading factors to be unreasonable, the PUCO applied the UNE methodology, stating that it was "deemed by the FCC to be in compliance with Section 276 of the Act." The application of the UNE methodology produced an overhead-loading factor that the PUCO deemed reasonable. SBC Ohio's claim that this decision violated the scope of the PUCO's delegated authority and constituted an unlawful substitution of its judgment for the FCC's is without merit. The FCC itself has stated that "states that continue to use UNE overhead allocations for payphone services are [ ] in full compliance with section 276 and our precedent." *Wisconsin PSC,* 17 Fed. Communications Comm. Record 2051, at ¶ 54. Although states are not required to use the UNE methodology, they are permitted to use it. Id. at ¶ 58.

{¶ 30} The PUCO, not SBC Ohio, has the authority to determine rates in this matter. The PUCO neither violated the scope of its delegated authority nor unlawfully substituted its judgment for that of the FCC. To the contrary, the PUCO acted according to the FCC's expectations and properly exercised the authority delegated to it. We reject the first error claimed by cross-appellant SBC Ohio.

## Second Claimed Error

{¶ 31} SBC Ohio argues that the PUCO is required under R.C. 4903.09 to make a complete record of its proceedings, including a transcript of the testimony and the exhibits, and to issue findings of fact and written opinions setting forth the reasons for its decisions. *Ideal Transp. Co. v. Pub. Util. Comm.* (1975), 42 Ohio St.2d 195, 71 O.O.2d 183, 326 N.E.2d 861. SBC Ohio's argument is a correct statement of the law. We conclude, however, that SBC Ohio has not established that the PUCO violated R.C. 4903.09.

{¶ 32} The purpose of R.C. 4903.09 is " 'to enable this court to review the action of the commission without reading the voluminous records in Public Utilities Commission cases.' " *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 306, 311, 513 N.E.2d 337, quoting *Commercial Motor Freight, Inc. v. Pub. Util. Comm.* (1951), 156 Ohio St. 360, 363, 46 O.O. 210, 102 N.E.2d 842. This court has stated that strict compliance with the terms of the statute is not required. *Tongren v. Pub. Util. Comm.* (1999), 85 Ohio St.3d 87, 89, 706 N.E.2d 1255. The detail need be sufficient only for this court to determine the basis of the PUCO's reasoning. *Allnet Communications Serv., Inc. v. Pub. Util. Comm.* (1994), 70 Ohio St.3d 202, 209, 638 N.E.2d 516. The PUCO is required only to set forth "some factual basis and reasoning based thereon in reaching its conclusion." Id. See *Ohio Domestic Violence Network v. Pub. Util. Comm.* (1994), 70 Ohio St.3d 311, 323, 638 N.E.2d 1012.

{¶ 33} Upon consideration of the record of the proceedings on appeal and the factual basis and reasoning of the PUCO, we conclude that the PUCO complied with and satisfied the requirements of R.C. 4903.09. We reject the second error claimed by cross-appellant SBC Ohio.

## STANDARD OF REVIEW

{¶ 34} R.C. 4903.13 provides that "[a] final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable." See *Constellation NewEnergy,* 104 Ohio St.3d at 540, 820 N.E.2d 885. "Under the 'unlawful or unreasonable' standard specified in R.C. 4903.13, this court will not reverse or modify a PUCO decision as to questions of fact when the record contains sufficient probative evidence to show that the PUCO's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty." *MCI Telecommunications Corp.,* 38 Ohio St.3d at 268, 527 N.E.2d 777. See, also, *AT & T Communications of Ohio, Inc. v. Pub. Util. Comm.* (2000), 88 Ohio St.3d 549, 555, 728 N.E.2d 371. This

court has consistently refused to substitute its judgment for that of the commission on evidentiary matters. See, e.g., *AK Steel Corp. v. Pub. Util. Comm.* (2002), 95 Ohio St.3d 81, 765 N.E.2d 862. "The burden is on the appellant to show that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the evidence." Id. at 86, 765 N.E.2d 862. This burden is difficult to sustain. This court has consistently deferred to the PUCO's judgment in matters requiring the PUCO to apply its special expertise and discretion. *Cincinnati Bell Tel. Co. v. Pub. Util. Comm.* (2001), 92 Ohio St.3d 177, 180, 749 N.E.2d 262; *AT & T Communications of Ohio, Inc. v. Pub. Util. Comm.* (1990), 51 Ohio St.3d 150, 154, 555 N.E.2d 288; *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1976), 46 Ohio St.2d 105, 108, 75 O.O.2d 172, 346 N.E.2d 778. Finally, due deference should be given to the statutory interpretations made by an agency that has substantial expertise and to which the General Assembly has delegated enforcement responsibility. *Weiss v. Pub. Util. Comm.* (2000), 90 Ohio St.3d 15, 17–18, 734 N.E.2d 775, citing *Collinsworth v. W. Elec. Co.* (1992), 63 Ohio St.3d 268, 272, 586 N.E.2d 1071.

{¶ 35} To the extent that PAO's and SBC Ohio's claimed errors are directed at factual determinations made by the PUCO, both parties have failed to show that the record lacks probative evidence sufficient to show misapprehension, mistake, or willful disregard of duty on the part of the PUCO or that the PUCO's determinations were against the manifest weight of the evidence. To the extent that PAO's and SBC Ohio's claimed errors are directed at the expertise of the PUCO, they have failed to convince this court that it should substitute its judgment for that of the PUCO.

## CONCLUSION

{¶ 36} We conclude that PAO as appellant and SBC Ohio as cross-appellant have failed to show that the PUCO committed reversible error. The PUCO's decisions were reasonable and lawful.

Order affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Vorys, Sater, Seymour & Pease, L.L.P., Philip F. Downey, and Stephen M. Howard, for appellant and cross-appellee Payphone Association of Ohio.

Bailey Cavalieri, L.L.C., William A. Adams, and Dane Stinson; and Jon F. Kelly and Mary Ryan Fenlon, for cross-appellant and intervening appellee SBC Ohio.

Jim Petro, Attorney General, and Duane W. Luckey, Thomas G. Lindgren, and Werner L. Margard III, Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

Thompson Hine, L.L.P., Thomas E. Lodge, and Carolyn S. Flahive, urging affirmance for amicus curiae, Ohio Telecom Association.